IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 11-215 |
| | ) | |
| MARCO ANTONIO BALDONADO-GARCIA | ) | |

OPINION

DIAMOND, D.J.

On September 29, 2011, defendant Marco Antonio Baldonado-Garcia was charged in a one-count indictment with illegal re-entry of a removed alien on or about September 8, 2011, in violation of 8 U.S.C. §1326(a). A one-count superseding indictment was filed on December 6, 2011, charging defendant with the same crime. The only difference between the original indictment and the superseding indictment is the addition of language clarifying that defendant did not receive permission from the Attorney General or the Secretary of the Department of Homeland Security to re-enter the United States.

Defendant filed a motion to suppress evidence arguing that all evidence obtained during the traffic stop of a vehicle in which he was a passenger should be suppressed. According to defendant, the request for his identification during the traffic stop violated his constitutional rights because it was without probable cause or reasonable suspicion.

On January 11, 2012, the court held a suppression hearing.[1] For the reasons stated on the record at the hearing, and further explained herein, defendant's motion to suppress will be denied.

---

[1] Alvaro DeCola served as the court's Spanish interpreter at the suppression hearing, as defendant understands and speaks Spanish.

I. **Factual Background**

At the suppression hearing, the government presented the testimony of Pennsylvania State Police Trooper Jay Watt and Special Agents Molly Rock and Michael Opferman of the Bureau of Immigration and Customs Enforcement ("ICE"). Defendant submitted a written proffer of testimony by Alejandro Mancilla Garcia, which was admitted as defendant's Exhibit A. The evidence entered at the hearing establishes the facts that follow.

On September 8, 2011, at approximately 9:30 a.m., a vehicle in which defendant was a passenger was stopped by Trooper Watt for a speeding violation on the Pennsylvania Turnpike. Trooper Watt approached the vehicle, observed two men inside and asked for their identification. The driver, later identified as Alejandro Mancilla Garcia, produced a Pennsylvania driver's license, as well as his vehicle registration and insurance information, and the passenger, later identified as defendant, provided a Mexico Consular identification card. There was a conversation among Trooper Watt, the driver of the vehicle and defendant concerning whether defendant had a passport or work permit to legally be present in the United States.[2] Both defendant and Mr. Mancilla Garcia told Trooper Watt that defendant's passport and work permit were at his home.

Both occupants remained inside of the vehicle while Trooper Watt returned to his patrol vehicle to run a check of the driver's identifying information. After verifying the driver's information, Trooper Watt asked defendant to step out of the vehicle so that he could verify his information. For safety purposes, Trooper Watt escorted defendant to his patrol vehicle and placed him in handcuffs in the front seat while he contacted the State Police Communications Center for

---

[2]Trooper Watt and Mr. Mancilla Garcia speak and understand both English and Spanish.

AO 72
(Rev. 8/82)

assistance in verifying defendant's information. Trooper Watt advised defendant that he would be detained pending verification of his information, but he would be released if it checked out. While seated in Trooper Watt's vehicle, defendant voluntarily stated that he did not have a work permit.

After receiving defendant's information from Trooper Watt, the Communications Center contacted ICE regarding the situation. At approximately 10:11 a.m., Special Agent Rock called Trooper Watt concerning defendant's status. Special Agent Opferman, who speaks Spanish, spoke to defendant over the telephone. In response to Special Agent Opferman's question about his citizenship, defendant responded that he is a citizen of Mexico. Defendant did not answer Agent Opferman's question about when he last entered the United States or if he previously was deported. Based on defendant's admission of his alienage and the fact that his name closely matched the name of an individual who previously had been deported, Special Agent Opferman advised Trooper Watt that there were sufficient grounds to detain defendant. Special Agent Opferman instructed Trooper Watt to transport defendant to the State Police barracks and an administrative detainer would be issued for him.

After Trooper Watt explained to Mr. Mancilla Garcia that defendant was being detained, he issued him a citation for speeding. Trooper Watt then transported defendant to the State Police Barracks in Gibsonia, Pennsylvania, where he obtained an administrative detainer issued by ICE. At approximately 11:23 a.m., Trooper Watt transferred defendant to the custody of ICE agents at an agreed upon meeting point along Interstate 79 South. Defendant subsequently was positively identified through the use of biometric data.

3

AO 72
(Rev. 8/82)

## II. Motion to Suppress Evidence (Document No. 11)

When a defendant seeks to suppress evidence, he bears the initial burden of "establish[ing] a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant. . . ." United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995). Once the defendant makes this showing, the burden shifts to the government to demonstrate that the search and seizure were reasonable. Id. Here, the seizure at issue was conducted without a warrant, so the government bears the burden to show that it was reasonable.

As an initial matter, defendant does not dispute that the traffic stop was reasonable.[3] Nonetheless, defendant contends that the Fourth Amendment did not permit Trooper Watt to ask him for identification during the traffic stop because he lacked probable cause or reasonable suspicion to do so. According to defendant, the request for his identification violated his constitutional rights because the traffic violation which gave rise to the stop could only be committed by the driver, not defendant, thus the request for defendant's identification was without probable cause or reasonable suspicion. As a result, defendant requests that this court suppress all evidence obtained during the traffic stop and find that his arrest was illegal.

The Supreme Court held in I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984), that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest,

---

[3] A vehicle stop is subject to the constitutional requirement that it not be "unreasonable" under the circumstances. Whren v. United States, 517 U.S. 806, 810 (1996). The decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred. Id.; see also United States v. Moorefield, 111 F.3d 10, 12 (3d Cir. 1997) ("[i]t is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations"). Here, the vehicle in which defendant was a passenger was stopped for a speeding violation, which has not been challenged.

4

AO 72
(Rev. 8/82)

search, or interrogation occurred." Based on that authority alone, defendant's motion to suppress must be denied. However, for reasons discussed below, Trooper Watt's request for defendant's identification was proper in any event.

The Supreme Court held in Brendlin v. California, 551 U.S. 249 (2007), that a passenger in a vehicle stopped by the police is seized by the stop within the meaning of the Fourth Amendment. As the Brendlin Court explained, "[a] traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver. . . ." Id. at 257. Thus, if a passenger is considered "seized" for Fourth Amendment purposes when a police officer makes a traffic stop, that passenger then may challenge the constitutionality of the actions taken during the stop. See id. at 258-59. Here, that would include Trooper Watt's request for defendant's identification.

Trooper Watt's request for defendant's identification did not run afoul of the Fourth Amendment. In Maryland v. Wilson, 519 U.S. 408 (1997), the Supreme Court held that during a lawful traffic stop an officer may order a passenger out of the vehicle as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk. Id. at 414–15. It therefore logically follows that an officer may request the passenger's identification so that he may "acquire a fair understanding of the surrounding scene." See United States v. Soriano-Jarquin, 492 F.3d 495, 500 (4th Cir. 2007) ("[i]f an officer may 'as a matter of course' and in the interest of personal safety order a passenger physically to exit the vehicle, he may surely take the minimally intrusive step of requesting passenger identification"). "When an officer legitimately stops a vehicle, the identity of the persons in whose company the officer suddenly finds himself may be pertinent to the officer's well-being." Id. at 500-01. Thus, Trooper Watt's request for defendant's identification was reasonably based on ensuring officer safety at the scene.

5

To the extent defendant claims that a *de facto* arrest occurred because he alleges he was detained at the scene of the traffic stop for more than an hour, see defendant Motion to Suppress Evidence (Document No. 11), ¶6, that argument is without merit. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Florida v. Royer, 460 U.S. 491, 500 (1983). A detention may become a *de facto* arrest if it lasts for an unreasonably long time, but there is no rigid time limit on an investigatory detention. United States v. Sharpe, 470 U.S. 675, 685 (1985). In determining whether a period of time is excessive, we must consider the "law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." Id.

In United States v. Sanchez, 417 F.3d 971 (8th Cir. 2005), the court found reasonable the detention of the occupants of a vehicle for 45 minutes following a traffic stop because officers spent most of the encounter completing the stop, including trying to confirm the identity of a passenger who had provided suspect identification. Id. at 975. Other courts have approved of investigative detentions of even longer duration. See e.g., United States v. Leal, 235 Fed. Appx. 937 (3d Cir. 2007) (delay of 80 minutes following a traffic stop while awaiting arrival of a canine unit did not constitute a *de facto* arrest); United States v. Maltais, 403 F.3d 550, 557 (8th Cir. 2005) (finding a detention of nearly three hours reasonable under the circumstances); United States v. Bloomfield, 40 F.3d 910, 917 (8th Cir. 1994) (one hour detention was reasonable where it was necessary to wait for a narcotics dog to arrive).

Here, defendant was detained for a reasonable amount of time in light of the circumstances

AO 72
(Rev. 8/82)

surrounding the stop of the vehicle in which he was a passenger. Trooper Watt stopped the vehicle at approximately 9:30 a.m. During the ensuing detention, Trooper Watt spent time completing the traffic stop, which included verifying the driver's information and issuing him a speeding citation. The more time consuming process involved Trooper Watt contacting the State Police Communications Center, which in turned contacted ICE. Trooper Watt had to wait for this process to occur, and he testified he received a call from Special Agent Rock at approximately 10:11 a.m., or about 40 minutes after stopping the vehicle. After that time, Special Agent Opferman spoke to defendant and determined there were sufficient grounds to detain him. Trooper Watt next was required to transport defendant back to the State Police barracks to obtain the administrative detainer that had been issued by ICE, and then he had to transfer defendant to the custody of ICE agents at an arranged meeting point along Interstate 79 South. This was accomplished by 11:23 a.m. Thus, only two hours elapsed from the time Trooper Watt stopped the vehicle in which defendant was a passenger until he was transferred to the custody of ICE agents. The roadside detention of defendant lasted a reasonable amount of time in light of these circumstances.

Finally, to the extent defendant claims that the Fifth Amendment was implicated by Trooper Watt's request for his identification, see defendant's Motion, ¶8D, that argument fails. In Berkemer v. McCarty, 468 U.S. 420 (1984), the Supreme Court held that the questioning of a motorist detained pursuant to a routine traffic stop does not constitute custodial interrogation for Miranda purposes. Id. at 440. Thus, Trooper Watt was not required to give defendant a Miranda warning prior to requesting his identification.

7

## III. Conclusion

For the foregoing reasons, defendant's motion to suppress evidence will be denied. An appropriate order will follow.

_____
Gustave Diamond
United States District Judge

Date: January 17, 2012

cc: James T. Kitchen
    Assistant U.S. Attorney

    Sally A. Frick, Esq.
    1601 Frick Building
    437 Grant Street
    Pittsburgh, PA 15219

AO 72
(Rev. 8/82)